# IN THE COURT OF APPEALS OF IOWA

No. 17-1006
Filed August 16, 2017

**IN THE INTEREST OF N.G.,**
**Minor Child,**

**S.P., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

　　　A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

　　　Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　　Jennifer M. Olsen of Olsen Law Office, Davenport, guardian ad litem for minor child.

　　　Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

The mother of a twelve-year-old girl appeals the termination of her parental rights. She asserts the grounds for termination were not proved because the State failed to provide reasonable services for reunification. She also asserts she should be given additional time to work towards reunification and that the establishment of a guardianship is in the child's best interests and preferable to termination. We find the district court appropriately terminated the mother's parental rights and affirm.[1]

The family came to the attention of the Iowa Department of Human Services (DHS) in September 2015, upon concerns N.G. was the victim of sexual abuse by her mother's then-paramour. Upon further investigation, and later after N.G. participated in counseling services, it was discovered two of the mother's previous boyfriends had also sexually abused N.G., with the mother offering no intervention to cease the abuse. Even after learning of the most recent abuse, the mother chose to leave N.G. unsupervised in the paramour's care overnight. The mother eventually married the abuser.

N.G. was removed from the family home in Davenport in October 2015 and placed in the care of her maternal aunt in Dubuque. N.G. was adjudicated a child in need of assistance (CINA) in February 2016. With the mother's lack of consistent compliance with offered services, the matter proceeded to termination, with a contested hearing held on June 1, 2017.

---

[1] The father has not been a part of N.G.'s life since she was two years old and his location during the pendency of the CINA proceeding was unknown. His parental rights were also terminated, and he does not appeal.

We review termination-of-parental-rights proceedings de novo. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

The mother does not contest the district court's specific findings under Iowa Code section 232.116(1)(f) and (i) (2017) but rather claims the DHS failed to offer reasonable services such that the grounds were not proven by clear and convincing evidence. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we need not review the unchallenged portions of the district court's decision). We agree the State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent. *C.B.*, 611 N.W.2d at 493. In considering the sufficiency of evidence to support termination, the reviewing court's focus is on the services provided by the State *and the response by the parent. Id.* at 494 (emphasis added).

In this case, by late April 2016, the mother had moved to Dubuque. In a September 9, 2016 report to the court, the DHS case worker noted the mother was not complying with offered services; she had not yet completed the psychological evaluation, and although she was offered twice-weekly visits with N.G., the mother was not consistent in attending nor taking advantage of expanded weekend visitation. The worker noted that in approximately June 2016 the mother "began to express an interest in allowing [the maternal aunt] to become [N.G.'s] legal guardian. She commented that it is what [N.G.] wants. She stated there is not much purpose in going through 'all these steps' if [N.G.] wants to stay with [the aunt]." Although the mother did request a change of venue to Dubuque County at the September 19, 2016 review hearing, the district

court denied the request, reasoning "the guardian ad litem, DHS worker, and provider are all familiar with the parties and the child's needs."

As it appeared the mother had resigned herself to having N.G. remain with the aunt, and the mother had failed to participate in offered services or take advantage of the visitation offered, we find the district court's decision fully supported by the record. Moreover, the interim DHS reports, as well as the testimony at the termination hearing, recounted the mother was offered transportation, should she commit to attending offered services. As such, the mother's claim on appeal that the DHS "obstructed" her ability to participate in offered services rings hollow.

Next the mother argues that establishing a guardianship with the aunt was in N.G.'s best interests. She also claims she should have been given additional time for reunification and her bond with N.G. should favor a guardianship over termination. *See* Iowa Code § 232.116(2), (3). Central to the best-interests findings of the court are the observations made by N.G.'s therapist and included in her March 2, 2017 report:

> [N.G.] herself identifies that she has been sexually abused by three men, all three of them her biological mother['s] . . . boyfriends. I have observed throughout treatment that [N.G.] is open about not trusting her biological mother . . . and shows signs that she and her biological mother are not securely attached psychologically. [N.G.] reports that her mother was verbally and physically abusive, did not protect her, and she also states her mother is an addict. [N.G.] feels her mother has chosen her boyfriends over her. In addition, her mother has been inconsistent in attending visits, and at first she was disappointed, and later I understand she refused to meet with her mother. ([N.G.'s aunt] reported that [N.G.'s] behaviors escalated after visits.)

There was no indication in the record that additional time would lead the mother to understand how to protect her daughter. Indeed, the mother continued to deny that any of her paramours had sexually abused N.G., preferring to believe that N.G. was simply making up the accusations. The testimony from the DHS worker and the recommendation from the guardian ad litem was that termination, rather than a guardianship, would give N.G. the sense of security and safety that her mother repeatedly failed to provide. The district court found:

> [N.G.] is not interested in reunifying with her mother or her father. Based on reports from the guardian ad litem and the DHS workers, the Court finds that the child has sufficient capacity to express a reasonable preference and she has done so. It would not be in her best interest to remain in a guardianship versus termination and adoption [by the aunt]. Termination of parental rights would be a positive step for [N.G.]. The [mother does] not have a close relationship with the child and [she has] not kept her safe.

We agree termination of the mother's parental rights was in the best interests of N.G. and no impediment to termination, even the prospect of a guardianship, undermines that decision.

**AFFIRMED.**